STATE v. KENNEDY

[130 N.C. App. 399 (1998)]

STATE OF NORTH CAROLINA v. FRANCIS M. KENNEDY

No. COA97-853

(Filed 4 August 1998)

**1. Taxation— sales taxes—embezzlement—retailer as trustee**

The trial court in a criminal prosecution for embezzlement of sales and use taxes correctly charged the jury that a purchaser pays sales tax to a retailer as "trustee" for the State and county. While the collection of sales taxes by a retailer lacks some of the trappings of a traditional trust and while sales tax receipts are often commingled with other funds, the plain language of the relevant statutes provides that sales taxes are held by the retailer as "trustee for and on account of the State or county." N.C.G.S. § 105-164.7, N.C.G.S. § 105-471.

STATE v. KENNEDY

[130 N.C. App. 399 (1998)]

**2. Taxation— sales taxes—embezzlement—remedy**

The criminal and civil penalties of the Tax Code do not provide an exclusive remedy for embezzlement of sales taxes collected by the retailer.

**3. Evidence— embezzlement of sales taxes—tax controversy in another state**

The trial court did not err in a criminal prosecution for embezzlement of sales taxes collected by a Massachusetts business by admitting extensive testimony about a tax controversy between the company and the Commonwealth of Massachusetts. Defendant was assessed a large sum by Massachusetts about the time he began to receive sales tax funds from a North Carolina lease, establishing a motive for his retention of the funds from the North Carolina transaction, and defendant himself testified that he used the North Carolina sales taxes to keep the company afloat as long as possible, paying other debts with the funds. The trial court limited the jury's consideration of the evidence to the purpose of establishing motive. N.C.G.S. § 8C-1, Rule 404(b).

Judge GREENE dissenting.

Appeal by defendant from judgment entered 24 October 1996 by Judge Narley L. Cashwell in Wake County Superior Court. Heard in the Court of Appeals 1 April 1998.

*Attorney General Michael F. Easley, by Associate Attorney General Anne M. Middleton, for the State.*

*Tharrington Smith, L.L.P., by Roger W. Smith, E. Hardy Lewis, and F. Hill Allen, for defendant appellant.*

HORTON, Judge.

In 1990, defendant Francis M. Kennedy was president and treasurer of Old Colony Group, Inc. ("Old Colony"), a Massachusetts corporation, which was in the business of arranging equipment financing. During that year, Carolina Freight Corporation ("Carolina Freight") entered into a lease with Old Colony for the use of a mainframe computer. Pursuant to the lease, Carolina Freight forwarded the sum of $176,064.98 each month to an Illinois bank. In addition, Old Colony invoiced Carolina Freight monthly in the sums of $5,281.95 for North Carolina sales tax and $3,521.30 for county sales tax, a total of $8,803.25. On 29 January 1991, Old Colony registered

STATE v. KENNEDY

[130 N.C. App. 399 (1998)]

with the North Carolina Department of Revenue to collect sales and use taxes. The State's evidence tended to show that Carolina Freight paid the invoiced taxes of $8,803.25 to Old Colony in Massachusetts from March 1991 through September 1994. The State's evidence further tended to show that the tax payments were deposited in the Bank of Boston each month, that Old Colony paid none of the taxes to the North Carolina Department of Revenue, and that Old Colony had a balance of $4,245.40 in the Bank of Boston in September 1994.

Defendant offered evidence tending to show that Old Colony began to have financial difficulties in 1991, and that the tax money paid by Carolina Freight was received, deposited and spent to help keep Old Colony afloat. Defendant admitted that he avoided talking with agents of the North Carolina Department of Revenue, mistakenly treating them like other creditors, but claimed he always intended to pay the money back. Defendant also testified that Old Colony recorded the tax payments as "debt" on its books rather than income.

Defendant was convicted by a Wake County jury of the embezzlement of sales and use taxes belonging to the State of North Carolina, in violation of the provisions of N.C. Gen. Stat. § 14-91 (1993), and sales and use taxes belonging to the County of Gaston, in violation of N.C. Gen. Stat. § 14-92 (1993). Defendant contends that he did not hold the taxes "in trust" as required for conviction under the embezzlement statutes, and that in any event the internal civil and criminal penalties set out in the Tax Code (Chapter 105) provide an exclusive remedy for alleged nonpayment of sales and use taxes.

[1] N.C. Gen. Stat. § 14-91 (Cum. Supp. 1997) applies to "any officer, agent, or employee of the State, or other person having or holding in trust for the same any . . . property and effects of the same . . . ." N.C. Gen. Stat. § 14-92 (Cum. Supp. 1997) applies to persons "having or holding money or property in trust for . . . a county . . . ." Defendant argues that his receipt of the sales taxes intended for North Carolina and Gaston County did not create a traditional fiduciary/trustee relationship with those governmental entities, because there is no requirement that a retailer keep tax receipts separate from other funds; and retailers have "unfettered discretion" in the use of sales tax receipts, provided that they keep records of the same and remit them when due. While we agree with defendant that the collection of sales taxes by a retailer lacks some of the trappings of a traditional trust and that, by the very nature of things, sales tax receipts are

often commingled with other funds of the retailer, we disagree with defendant's position based on the plain language of the relevant statutes. N.C. Gen. Stat. § 105-164.7 (1997) provides that the sales tax "shall be a *debt* from the purchaser to the retailer until paid" but when paid by the purchaser is held by the retailer "as *trustee* for and on account of the State . . . ." (Emphasis added.) Likewise, N.C. Gen. Stat. § 105-471 (1997) provides that the one percent local sales tax "shall be paid by the purchaser to the retailer as *trustee* for and on account of the State or county wherein the tax is imposed." (Emphasis added.) Pursuant to these statutes, the trial court correctly charged the jury in this case that a purchaser pays sales taxes to a retailer as "trustee" for the state and county.

[2] Nor do we believe that the criminal and civil penalties of the Tax Code provide an exclusive remedy in this case. Defendant argues the revenue laws are a "comprehensive scheme" which provide an exclusive penalty in tax cases. We note, however, that pertinent subsections of N.C. Gen. Stat. § 105-236 set out penalties for Tax Code violations, but provide that such penalties are "in addition to other penalties provided by law[.]" N.C. Gen. Stat. § 105-236(7), (8) and (9) (1997). We find further support for our view in a recent amendment to the Tax Code, codified as N.C. Gen. Stat. § 105-236.1:

> The Secretary may appoint employees of the Criminal Investigations Division to serve as revenue law enforcement officers having the responsibility and subject-matter jurisdiction to enforce the felony tax violations in G.S. 105-236 and to enforce any of the following criminal offenses *when they involve a tax imposed under Chapter 105 of the General Statutes: G.S. 14-91 (Embezzlement of State Property), G.S. 14-92 (Embezzlement of Funds)*, G.S. 14-100 (Obtaining Property by False Pretenses), G.S. 14-119 (Forgery), and G.S. 14-120 (Uttering Forged Paper).

(Emphasis added.) This 1997 legislation supports the view that the legislature did not intend for the Tax Code to set out the only criminal penalties available for the nonpayment of tax funds.

Finally, we note the decisions from our sister jurisdictions support our view. *See, for example, People v. Kopman,* 193 N.E. 516 (Ill. 1934); *State v. Sankey,* 299 N.W. 235 (S.D. 1941); *Anderson v. State,* 265 N.W. 210, 212 (Wis. 1936). *See also* Annotation, "Retailer's Failure to Pay to Government Sales or Use Tax Funds as Constituting Larceny or Embezzlement," 8 ALR 4th 1068 (1981). Defendant relies on a decision from New York, *People v. Valenza,* 457 N.E.2d 748 (N.Y.

1983). At the time of the *Valenza* decision, however, failure to pay sales taxes was not included in the criminal penalties section of the New York Tax Code. The New York court held that "[t]he Legislature's structuring of [the provision] to provide substantial civil penalties for failing to pay over sales tax and to exclude this conduct from the criminal penalties section must be deemed to manifest an intent to exclude such conduct from criminal prosecution under either the Tax Law or the Penal Law . . . ." *Id.* at 751-52. The State points out that at the next session of the New York legislature the New York Tax Code was amended to provide that "[t]he penalties provided in this section shall not preclude prosecution pursuant to the penal law . . . ." N.Y. Tax Law § 1145(d) (McKinney Supp. 1984-1985). We also note that our Tax Code has no provision excluding the nonpayment of sales taxes from criminal prosecution.

[3] Defendant also contends the trial court erred in admitting over his objection extensive testimony about a tax controversy between Old Colony and the Commonwealth of Massachusetts. The evidence offered by the State tended to show that from 1988 to 1991, Old Colony did not file complete returns with Massachusetts, and that Massachusetts began an audit of Old Colony on 13 March 1991. Further, the records of Old Colony showed that Old Colony had been collecting Massachusetts sales tax, but filed tax reports stating it had no sales or use tax liability. Massachusetts assessed Old Colony $82,993.22 for the period 1986-1987 and $80,047.38 for the period 1988-1991. The State offered the evidence to show motive, intent, and absence of mistake under Rule 404(b). Later, however, the trial court limited the jury's consideration of the evidence only for the purpose of establishing motive. Rule 404(b) is "a clear general rule of *inclusion* of relevant evidence of other crimes, wrongs or acts by a defendant, subject to but *one exception* requiring its exclusion if its *only* probative value is to show that the defendant has the propensity or disposition to commit an offense of the nature of the crime charged." *State v. Coffey*, 326 N.C. 268, 278-79, 389 S.E.2d 48, 54 (1990). The State argues defendant has not brought himself within the narrow exclusion established by Rule 404(b), and we agree. Defendant was assessed a large sum by Massachusetts about the time he began to receive sales tax funds from Carolina Freight, establishing a motive for defendant's retention of the funds from the North Carolina transaction. We also note that defendant himself testified that he used the North Carolina sales taxes to keep Old Colony "afloat" as long as possible, and paid other debts with the funds. Although the State also

offered the evidence in question for other purposes under Rule 404(b), such as to show defendant's intent, the trial court exercised its discretion in defendant's favor, limiting the jury's consideration of the evidence in question only to show motive. The trial court did not abuse its discretion in admitting evidence of Old Colony's liability to Massachusetts for unpaid sales tax.

After careful review of defendant's other arguments and assignments of error, we find them to be without merit. Defendant was vigorously defended by capable counsel and had a trial free from prejudicial error before an able trial judge and a jury. We decline, therefore, to disturb the jury verdicts and the judgment based thereon.

No error.

Judge LEWIS concurs.

Judge GREENE dissents.

Judge GREENE dissenting.

I respectfully dissent from the majority opinion because I do not believe that our legislature intended for retailers holding tax funds to be bound by the type of trust relationship contemplated in our embezzlement statutes.

The trial court in this case instructed the jury that to find Defendant guilty of the charges against him, they first had to find that "[Old Colony Group, Inc.] was a trustee of the State of North Carolina [and of Gaston County]." The trial court then stated to the jury that "the law of North Carolina provides that sales taxes shall be paid by the purchaser to the retailer as trustee for and on account of the [S]tate . . . ." I believe, therefore, that the dispositive issue in Defendant's appeal is whether Chapter 105 (the Tax Code) of the North Carolina General Statutes requires sales tax receipts to be held "in trust" such that misapplication of these tax receipts may subject a defendant to conviction for the embezzlement of state and/or county funds.

Defendant was charged with aiding and abetting Old Colony in the embezzlement of state sales and use tax, pursuant to section 14-91, and in the embezzlement of county sales and use tax, pursuant to section 14-92. To show that a defendant has violated sections 14-91

and/or 14-92, the State must show that the defendant has misapplied property held "in trust" for the State, a county, or some other enumerated entity. N.C.G.S. §§ 14-91 and 14-92 (1993). "[T]he requirement that defendant misapply funds which he 'holds in trust' expresses the requirement distinctive to embezzlement that the defendant 'received the property he embezzled in the course of his employment and by virtue of his fiduciary relationship with his principal.' " *State v. Bonner*, 91 N.C. App. 424, 426, 371 S.E.2d 773, 774 (1988) (quoting *State v. Kornegay*, 313 N.C. 1, 22, 326 S.E.2d 881, 897 (1985)), *disc. review denied*, 323 N.C. 705, 377 S.E.2d 227 (1989). A fiduciary relationship exists when "there has been a special confidence reposed in one who in equity and good conscience is bound to act in good faith and with due regard to the interests of the one reposing confidence," or when "there is confidence reposed on one side, and resulting domination and influence on the other." *State v. Seay*, 44 N.C. App. 301, 307, 260 S.E.2d 786, 789-90 (1979), *disc. review denied and appeal dismissed*, 299 N.C. 333, 265 S.E.2d 401, *and cert. denied*, 449 U.S. 826, 66 L. Ed. 2d 29 (1980).

Defendant herein contends that he did not hold the sales and use tax collected from Carolina Freight "in trust" pursuant to a fiduciary relationship, and that the trial court therefore should have granted his motion to dismiss the charges brought pursuant to sections 14-91 and 14-92. *See State v. Roseborough*, 344 N.C. 121, 126, 472 S.E.2d 763, 766 (1996) (noting that a motion to dismiss should be granted where the State fails to present substantial evidence of each essential element of the charged offense). The State counters that the Tax Code provides that retailers hold tax receipts "as trustee for and on account of the State," and, as such, hold the tax funds received "in trust" as a matter of law.

Statutes levying a tax, *State v. Campbell*, 223 N.C. 828, 830, 28 S.E.2d 499, 501 (1944), imposing a penalty, *Jones v. Georgia-Pacific Corp.*, 15 N.C. App. 515, 518, 190 S.E.2d 422, 424 (1972), or creating a criminal offense, *State v. Clemmons*, 111 N.C. App. 569, 572, 433 S.E.2d 748, 750, *cert. denied*, 335 N.C. 240, 439 S.E.2d 153 (1993), must be strictly construed. In strictly construing these statutes, the intent of the legislature is the controlling factor. *State v. Hart*, 287 N.C. 76, 80, 213 S.E.2d 291, 294 (1975). Legislative intent is "usually ascertained not only from the phraseology of the statute, but also from the nature and purpose of the act and the consequences which would follow its construction one way or the other." *In re Hardy*, 294 N.C. 90, 97, 240 S.E.2d 367, 372 (1978) (emphasis omitted). Our courts

must presume that "the legislature comprehended the import of the words employed to express its intent," *State v. Baker*, 229 N.C. 73, 77, 48 S.E.2d 61, 65 (1948); accordingly, technical terms must ordinarily be given their technical meaning, *Henry v. Leather Co.*, 234 N.C. 126, 129, 66 S.E.2d 693, 695 (1951), and where the words of a statute have not acquired a technical meaning, they must be construed in accordance with their common and ordinary meaning, unless a different meaning is indicated by the context, *Transportation Service v. County of Robeson*, 283 N.C. 494, 500, 196 S.E.2d 770, 774 (1973).

The Tax Code provides that sales tax shall be:

add[ed] to the sales price of . . . tangible personal property . . . [and] shall constitute a part of such purchase price, [and] shall be a debt from the purchaser to the retailer until paid . . . . Said tax . . . shall be paid by the purchaser to the retailer as trustee for and on account of the State and the retailer shall be liable for the collection thereof and for its payment to the Secretary and the retailer's failure to charge to or collect said tax from the purchaser shall not affect such liability.

N.C.G.S. § 105-164.7 (1997). Strictly construing the Tax Code, I would hold that the language that tax receipts are held by the retailer "as trustee" does not contemplate that tax receipts be held "in trust" as required for conviction under the embezzlement statutes here at issue. Indeed, although the Tax Code contemplates that sales tax be bourne by the purchaser, the retailer is responsible for payment of sales tax whether or not he charges and collects it from the purchaser. The retailer, therefore, cannot be said to hold *the purchaser's funds* "in trust" for the State.

"[W]here a literal interpretation of the language of a statute would contravene the manifest purpose of the statute, the reason and purpose of the law will be given effect and the strict letter thereof disregarded." *In re Banks*, 295 N.C. 236, 240, 244 S.E.2d 386, 389 (1978); *accord Comr. of Insurance v. Automobile Rate Office*, 294 N.C. 60, 68, 241 S.E.2d 324, 329 (1978) ("In construing statutes courts normally adopt an interpretation which will avoid absurd or bizarre consequences, the presumption being that the legislature acted in accordance with reason and common sense and did not intend untoward results."). "Trustees" may not commingle trust funds with their personal or business funds unless the trust instrument allows them to do so. *See* 76 Am. Jur. 2d *Trusts* § 381 (1992). I believe that our legislature could not have intended the absurd result that retailers would

## STATE v. KENNEDY

[130 N.C. App. 399 (1998)]

be liable for violating a trust relationship when they commingle the money received for the sale of an item and the sales tax collected on that item in the same cash drawer throughout the course of the business day. Indeed, the Tax Code contemplates that retailers *will* commingle tax receipts with their other receipts. *See* N.C.G.S. § 105-164.19 (1997) (allowing for an extension of time to pay taxes owed, which would be unnecessary if tax funds were segregated from other receipts).

Furthermore, the Tax Code must be considered as a whole in determining the legislative intent behind the phrase "as trustee" as it appears in section 105-164.7. *See Hardy*, 294 N.C. at 95-96, 240 S.E.2d at 371-72 ("Words and phrases of a statute may not be interpreted out of context, but individual expressions 'must be construed as a part of the composite whole and must be accorded only that meaning which other modifying provisions and the clear intent and purpose of the act will permit.'" (quoting *Watson Industries v. Shaw, Comr. of Revenue*, 235 N.C. 203, 210, 69 S.E.2d 505, 511 (1952))). Section 105-238 of the Tax Code expressly provides that "[e]very tax imposed by [Subchapter I, providing for the levy of taxes], and all increases, interest and penalties thereon, shall become, from the time it is due and payable, *a debt* from the person, firm, or corporation liable to pay the same to the State of North Carolina." N.C.G.S. § 105-238 (1997) (emphasis added).

> A debt is not a trust. . . . At times, whether a debt or a trust has arisen may not be clear. In general, it is understood that when the "trustee" of the funds is entitled to use them as his or her own and commingle them with his or her own money, a debtor-creditor relationship exists, not a trust.

76 Am. Jur. 2d *Trusts* § 16 (1992). The Tax Code explicitly provides that it creates a debtor-creditor relationship between retailers and the State, and this explicit language, combined with the Tax Code's implicit acceptance of the fact that retailers commingle tax receipts with other funds, must override any implication that the language "as trustee" creates a trust relationship.[1]

---

1. I note that our courts have held that a tax "is not a debt in the ordinary sense of the word," *Commissioners v. Hall*, 177 N.C. 490, 491, 99 S.E. 372, 372 (1919); *accord Comrs. v. Blue*, 190 N.C. 638, 641, 130 S.E. 743, 745 (1925) *and New Hanover County v. Whiteman*, 190 N.C. 332, 334, 129 S.E. 808, 809 (1925), and that taxes "do not constitute a debt within the meaning of the Constitution," *State v. Locklear*, 21 N.C. App. 48, 50, 203 S.E.2d 63, 65 (1974). These determinations, however, are not dispositive of this case. In *Hall*, our Supreme Court noted that a tax was not a debt "rest[ing] upon contract or upon the consent of taxpayers" in determining that taxes are not liable to

Generally, embezzlement charges do not arise from a debtor-creditor relationship. *Gray v. Bennett*, 250 N.C. 707, 712, 110 S.E.2d 324, 328 (1959) ("[W]hen dealings between two persons create a relation of debtor and creditor, a failure of one of the parties to pay over money does not constitute the crime of embezzlement.").

In light of the foregoing, I believe that our legislature did not intend that tax receipts be held "in trust" by the retailer, despite the language in the Tax Code that retailers hold tax receipts "as trustees." Accordingly, the charges against Defendant pursuant to the embezzlement statutes should have been dismissed by the trial court due to the State's failure to present substantial evidence that a trust relationship existed between Defendant and the State, and between Defendant and Gaston County. I would therefore reverse Defendant's conviction pursuant to sections 14-91 and 14-92. In so stating, I note that within the Tax Code, our legislature has provided severe monetary penalties, as well as the possibility of imprisonment, for any attempt to evade or defeat a tax, and for the wilful failure to file a return, supply information, or pay a tax. N.C.G.S. § 105-236 (7-9) (1997). Our legislature has also provided less severe penalties for less egregious Tax Code violations. N.C.G.S. § 105-236. The State, however, chose not to proceed against Defendant pursuant to the Tax Code's internal penalties.

---

set-off by the taxpayer against monies due the taxpayer from the State. *Hall*, 177 N.C. at 491, 99 S.E. at 372. In *Locklear*, this Court determined that the legislature has the authority to impose imprisonment for the wilful failure to pay taxes without violating the constitutional provision prohibiting imprisonment for debts "arising out of or founded upon contract," because taxes are *not* debts "arising out of or founded upon contract." *Locklear*, 21 N.C. App. at 50, 203 S.E.2d at 64-65. These cases, however, did not consider whether receipt of tax funds creates a trust relationship between a retailer and the State.